**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **TAMAR MCCULLOUGH,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Case No.: RWT 11cv1782 |
| | * |
| **MICHAEL J. STOUFFER**, *et al.*, | * |
| | * |
| Defendants. | * |

<u>**MEMORANDUM OPINION**</u>

Currently pending before the Court is Defendants' Motion for Summary Judgment.  ECF No. 31, which Plaintiff opposes.  ECF Nos. 36; 38.  The Court finds a hearing in this matter unnecessary, s*ee* Local Rule 105.6 (D. Md. 2011), and for the reasons discussed below, the Court will grant Defendants' motion.

<u>**Background**</u>

Plaintiff Tamar McCullough ("McCullough") references a 2009 lawsuit filed in this Court in which he claimed his life was in danger at North Branch Correctional Institution ("NBCI").  Compl. at 1-2; *see McCullough v. Kitis*, Civil Action RWT-09-206 (D. Md.).  In that complaint McCullough claimed he was targeted for threats and assaults by other inmates because they knew about his "high profile" case involving an eight year-old female victim.  Compl. at 1. He states that correctional officers as well as case managers did nothing to assist him in obtaining protective custody housing and correctional officers had threatened to physically assault him.  *Id.* at 1-2.  McCullough sought an order from this Court requiring correctional officials to permanently assign him to protective custody and prohibit his transfer out of state. *Id.*  Although McCullough asserts the lawsuit was dismissed as moot because he was transferred from NBCI to Patuxent Institution, the case was dismissed on the merits pursuant to an

unopposed Motion for Summary Judgment.  *Id.* at 2; *see also McCullough v. Kitis*, Civil Action RWT-09-206 (D. Md.) ECF Nos. 32, 33.

In the instant case, McCullough states that shortly after the 2009 case was closed, he was transferred back to NBCI.[1]  Compl. at 2.  Upon his return, McCullough again requested protective custody but his request was denied.  *Id.* at 3.  He states he was put into general population where he experienced threats, assaults, and extortion.  McCullough claims numerous inmates refused to double-cell with him.  *Id.*  In addition he states that Sgt. William L. Thomas and Officer Keith Markle pointed McCullough out to their co-workers as the inmate who filed a lawsuit against them.  *Id.*

McCullough claims Case Manager Mike McMahan, Officer E. Gotjen, Officer Markle, Sgt. Whitaker, and Lt. Wedlock set him up to be housed in a cell with inmate James Barnes, who suffers from a serious mental disorder.  *Id*.  McCullough states Barnes attempted to perform a sexual act on him and he was forced to defend himself.  *Id*.  He alleges Gotjen lied on a report concerning the incident.  *Id.*  As a result, McCullough received a sixty day segregation sentence and was convicted of additional criminal charges for second-degree assault.  *Id.*  Despite filing numerous administrative remedy procedure complaints, McCullough states he was not given any assistance from prison officials when he was housed at NBCI.  *Id.*

On December 1, 2010, McCullough was transferred from NBCI to Western Correctional Institution (WCI), where he claims his request for protective custody housing went unanswered by case manager James Wilson.  *Id.* at 4.  McCullough alleges that he was threatened by inmates who refused to be double-celled with him and was extorted for commissary items.  *Id.*  He states the threats continued when he was moved to another housing unit and his continued requests for

---

[1] McCullough states his Complaint was dismissed on September 1, 2009; he was assigned to administrative segregation at Patuxent on September 3, 2009; and he was transferred back to NBCI on September 21, 2009. Compl. at 2.

protective custody were disregarded. *Id.*  In particular, McCullough states his complaints about threats and his requests for protective custody were directed to Sgt. Semmons, Officer R. Christner, Officer Ms. Mock, Case Manager, James Wilson, Lt. McKenzie, Case Manager Devore, and Warden J. Phillip Morgan.  *Id.*

On May 31, 2011, McCullough maintains that he was attacked, suffering multiple stab wounds as well as a blow to the head with a hard object concealed in a sock.  *Id.* at 4.  After he was treated in the WCI infirmary, McCullough was escorted back to housing unit 3 where he claims he was left restrained behind his back with a bleeding arm.  *Id.* at 5.  Eventually McCullough was placed on administrative segregation at WCI, where Officer D. Connor allegedly forced him to accept a cell-mate two weeks after he was attacked.  *Id.*  McCullough alleges that Razzaq Karim, the inmate placed in the cell with McCullough, choked McCullough until he was unconscious.  *Id.*  When McCullough regained consciousness, Karim allegedly attacked him again, ramming him into the back of the cell.  Karim told McCullough that Connor told him that McCullough is a child molester.  *Id.*  McCullough alleges the failure to assign him to a single cell pending an investigation into the assault against him by unknown assailants, was deliberate indifference to his safety.  Doc. No. 3 at 8.

In his supplement to the complaint, McCullough alleges that his repeated pleas for help were ignored, which resulted in the attack on May 31, 2011.  Doc. No. 3 at 7.  He states he filed administrative complaints on March 13, 2009, and on April 1, 2009, requesting protective custody, but the complaints did not prompt a hearing or investigation into his claims.  *Id.* McCullough further states that the refusal to address his concerns about safety continue, explaining he has filed request forms on June 11, 15, and 24, 2011, and on July 11 and 26, 2011, to no avail.  *Id.*

McCullough further claims that the Defendants are deliberately indifferent to his safety because they refuse to provide him with a single cell. He contends that any inmate who is assigned to a cell with him could be a gang member or could find out about his "high profile" criminal case. *Id.* at 10. He states that Lt. Natale has threatened to retaliate against him for complaining about the incidents concerning Karim. *Id.* On June 10, 2011, McCullough alleges he was escorted out of his cell by Connor to Natale's office to discuss a letter McCullough's family wrote to the warden threatening to sue WCI administrators if he is killed in prison. *Id.* McCullough claims that Natale threatened that if a lawsuit was filed he would assign the biggest and most violent inmate on administrative segregation to be McCullough's cellmate. *Id.* Six days later, McCullough states he was choked unconscious by inmate Karim. *Id.*

On June 27, 2011, McCullough alleges he was forced to share his cell with inmate Miguel Vazcquea who he claims was suffering from a contagious staph infection as well as a mental disorder. *Id.* On July 6, 2011, McCullough was again escorted to Natale's office by Sgt. R. Bucadueles[2] about a complaint McCullough filed regarding the assault by Karim and the allegation that Connor had told Karim that McCullough was a child molester. *Id.* During this meeting McCullough states that Natale threatened that McCullough would remain on administrative segregation if he refused to "sign off" on the complaint. *Id.* McCullough alleges he was called a liar and again threatened by Natale on July 15, 2011, when he again refused to "sign off" on a complaint. *Id.*

McCullough alleges that his move from housing unit 5 to housing unit 3 was unwarranted and evidenced deliberate indifference to his safety because the inmates confined to housing unit

---

[2] This individual was not named as a Defendant.

3 were known to be violent.  *Id.* at 11.  On May 10, 2011, McCullough claims Sgt. Semmons[3] stood in the front area of housing unit 5 and said that inmates refused to be double-celled with McCullough because they had heard rumors from other inmates about his "high profile case" involving a young victim.  *Id.*  At that time McCullough asked Semmons to place him on protective custody and he refused to do so.  *Id.*  McCullough states the refusal was a contributing factor to the assault he suffered on May 31, 2011.  *Id.*

McCullough further alleges Lt. McKenzie was given a complaint form on May 15, 2011, stating that McCullough's life was being threatened by members of prison gangs due to his high profile case.  *Id.* at 12.  He claims McKenzie never responded to the complaint, nor did he respond to McCullough's request for protective custody.  *Id.*  McCullough further states that he was never contacted regarding an investigation into his claims.  *Id.*

McCullough claims he informed Officer R. Christener that inmates were threatening to kill him because they knew the circumstances of his crime.  *Id.* at 13.  McCullough requested protective custody from Christener and explained that inmates Paul Matthews and Wadell Brooks refused to be housed with him because of the nature of McCullough's offense.  *Id.*  Christener was also allegedly informed that inmates were spreading rumors to McCullough's cellmates about his criminal offense.  *Id.*  Despite McCullough's requests, he claims Christener instead wrote that McCullough was causing problems with all of his cellmates.  *Id.*  Christener allegedly told McCullough that all the inmates housed with him had been moved numerous times because they had been having problems with other cellmates.  *Id.* at 13-14.  McCullough claims that it was Christener who was the impetus behind moving him to a different housing unit and relies on Christener's assertions that other inmates were moved into McCullough's cell because

---

[3] No employee by this name could be identified on any duty rosters.  *See* ECF No. 31, Ex. 10.

they had problems with other inmates to refute Christener's report that McCullough was causing problems.  *Id.* at 14.

In his second amended complaint, McCullough alleges that case managers James Wilson and Doug Devore illegally warehoused him on administrative segregation for over 225 days, preventing him from receiving an education, holding an institutional job, attending religious services, and earning diminution of confinement credits.  Doc. No. 24 at 1.  He further claims that Wilson, Defore, and Natale are ordering lower ranking officers to put cellmates in his cell despite McCullough's claims of being stabbed by numerous inmates who attacked McCullough because of the nature of his crime.  *Id.* at 2.  McCullough claims that some of the inmates forced into his cell with him are involved in gang activities and, as such, present a threat of harm to him.  *Id.*  Wilson and Devore are allegedly preventing McCullough from being assigned to protective custody and from having his security level lowered to enable his transfer to another medium security prison, such as Jessup Correctional Institution (JCI) where long term protective custody is available.  *Id.*

McCullough further alleges that Defendants are conspiring to have him transferred out of Maryland, which McCullough claims will not eliminate the threats on his life because prison inmates have relatives research other prisoners' criminal history on the internet, including McCullough's history, making the circumstances of his conviction readily available to any prison population.  *Id.* at 2-3.  He further claims he has informed Defendants that many inmates have knowledge of the details of his crime and that it is likely he will continue to experience threats and physical abuse if he is transferred out of state.  *Id.* at 3.  McCullough further claims he will be harmed by such a transfer because the cost of phone calls to his relatives will increase and he will not be able to receive visits from his family.  *Id.*  McCullough alleges that the

transfer to a prison outside the state is a form of retaliation against him and states there is no other justifiable reason for him to continue to be warehoused on administrative segregation. *Id.* at 4.

McCullough further claims that Lt. Natale orders officers in his housing unit to continuously relocate him from cell-to-cell, forcing him to pack and unpack his belongings on a regular basis. *Id.* In addition, he claims Natale orders officers to go into his cell and "trash it" in an effort to harass him. *Id.* McCullough asserts his rights will continue to be violated so long as he is confined in a prison in Cumberland, Maryland (WCI or NBCI). *Id.* He asserts he is not a threat to other inmates confined to protective custody and explains his assault on inmate Barnes was done in self-defense when Barnes attempted a sexual act with him. *Id.* at 5.

### **Standard of Review**

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore*

*Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added).

<u>Analysis</u>

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Framer v. Brennan*, 511 U.S. 825, 837 (1994); s*ee also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997). These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at

298.  In other words, "'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'"  *Brown v. N. C. Dept. of Corrs.,* 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Central to McCullough's claims are his assertions that he repeatedly asked for protective custody housing and warned prison officials of an impending assault, which then occurred at the hands of several unidentified inmates.  It is not disputed that McCullough was assaulted on May 31, 2011.  ECF No. 31, Ex. 11.  Also undisputed is that McCullough filed an ARP on May 15, 2011, stating he should be assigned to protective custody because he was being threatened by other inmates.  ECF Nos. 24, Ex. C; ECF No. 31, Ex. 16.  The ARP was dismissed for procedural reasons, i.e., that case management decisions are not an appropriate subject matter for an ARP.  The basis for dismissal of Plaintiff's May 15, 2011 ARP was affirmed by the Commissioner of Correction and the Inmate Grievance Office ("IGO").  ECF No. 31, Exs. 16 & 17.

Under applicable regulations, the ARP coordinator must perform a preliminary review of complaints filed by inmates to determine if they concern an emergency matter.  If the ARP concerns an emergency, all time constraints are suspended and the Warden is required to: accelerate the investigative process; direct immediate corrective action; and/or notify the institutional health care provider of any medical complaints.  ECF No. 31, Ex. 14 at 3.  Additionally, the institutional coordinator is required to accept a late filing or take appropriate action outside of the ARP process for good cause if failure to do so could result in serious harm.  *Id.* at 8.  Plaintiff's ARP read in pertinent part:

> Warden J. Philip Morgan, I'm writing you because my life is in danger by inmates.  During the year of 2002, I was charged with a crime that involved

a young victim and my criminal case was highly publicized.  My being able to function, normally as the average inmate, who strives to do well, has been entirely difficult because of my high profile case.  Since the beginning of my incarceration of year 2002, up until now, at different jails and prison institutions in this state of Maryland I've had feces and urine thrown on my person, I've been chased off of a tier with fashioned knives, I've been physically assaulted on numerous occasions, I've been constantly threatened by inmates, mostly different ones of various gangs, in general, that they are going to try and murder me.  I've been extorted, inmates refuse to be housed with me because of the nature of my criminal charges of year 2002, I'm currently serving my prison term for.  I've been deliberately placed in the cell with certain individual inmates with known severe mental disorder, which, one, tried to perform a homosexual act on me, and I was forced to defend myself.

***********

MY COMPLAINT IS: That I've been turning in numerous Inmate Request Forms trying to seek help that I might be housed on protective custody.  I've made request of my former case manager of housing unit 5, J. Wilson, Sgt. Semmons, Ms. Mock and the normal 8 – 4 shift tier officer, CO II Chrstner, requesting housing on protective custody verbally and by written request, but I was repeatedly denied and threatened that I would be placed on segregation status.  I've been paying inmates food and other items off commissary to keep the gang inmates from trying to kill me when I was located in housing unit 5. . . . I'm having my life threatened here in housing unit #3 and inmates bump me deliberately whenever passing me by doing movement time going to the recreation yards, on the tiers or going to the Chow Hall . . . I should not have been moved to this housing unit #3 because of inmates not wanting to be housed with me because of my criminal charges.

MY REQUEST is that I be housed on protective custody and if you refuse me protective custody, that I be moved back to housing unit #5 on C-tier and double cell with a[n] inmate who is not involved in no [sic] gang activity.  My complaints have be[en] ongoing and my civil rights violated repeatedly.  I won't lose this next law-suit I file, or my family won't.

ECF No. 24 at Ex. C at 1– 5.[4]

Despite acknowledging receipt of the ARP, Defendants declare under oath that McCullough did not request protective custody prior to being assaulted on May 31, 2011.  ECF No. 31, Exs. 4, 9, 11, and 12. They do not address why McCullough's May 15, 2011 ARP was

---

[4] In addition to this ARP, McCullough attaches a copy of an inmate request form seeking assignment to protective custody to his second amended complaint which is dated May 15, 2011.  ECF No. 24, Ex. C at 18.  There is no indication on the form that it was presented to or received by correctional staff.

not treated as one requiring special treatment under the regulations set forth above.  *Id.*, Ex. 13.
Based on the undisputed facts, the undersigned concludes that McCullough did in fact inform
prison officials that he was being threatened by other inmates, required additional protection, and
did not receive it.  Further, it is clear that subsequent to his request, McCullough's prediction
came to fruition and he was assaulted.  *See id.* Ex. 18 at 8–10.

The question remains whether Defendants' failure to act on McCullough's request for
protective custody was evidence of deliberate indifference to his safety or the result of
managerial decisions based on other salient factors involved in McCullough's case.  McCullough
claims he is not a threat to other inmates confined to protective custody and explains his assault
on inmate Barnes was done in self-defense when Barnes attempted a sexual act.  ECF No. 24 at
4–5.

Defendants contend that McCullough's behavior and his history of violent assaults on
both staff and other inmates make his placement on protective custody problematic at best.  ECF
No. 31, Ex. 4.  McCullough received an additional six-month sentence for assaulting a Division
of Correction (DOC) employee on March 28, 2011.  ECF No. 24, Ex. B at 19.  He also pled
guilty to assaulting Barnes at an institutional adjustment proceeding.  *Id.*, Exs. A, B at 2–6, 17–
18.  Defendants explain that inmates assigned to protective custody have had verified threats on
their lives and McCullough could "wreak havoc" on that population given his "propensity for
violence."  ECF No. 31, Ex. 4 ¶ 6.  Defendants further assert that McCullough "does not have a

documented enemy in every State of Maryland institution that would warrant PC placement."[5]
*Id*.

In his Response in Opposition, McCullough argues that the availability of information concerning the details of his criminal offense is enough to justify his permanent assignment to protective custody. ECF Nos. 36; 38.  He claims other inmates are given access to this information through family members who research the matter on the internet.  McCullough attaches two Baltimore Sun internet articles describing the facts of his offense.  ECF No. 38. The information is not difficult to find, but there is no objective evidence that prisoners have access to the information.  The circumstances of McCullough's offense do not appear to have been considered by Defendants in weighing the decision regarding McCullough's assignment to protective custody.  The court, however, takes judicial notice of the fact that many prisoners in maximum security prisons have been convicted of crimes involving children or crimes otherwise sufficiently heinous to cause the prisoner to be repugnant to others.

Following the assault on May 31, 2011, McCullough was assigned to administrative segregation and an investigation was conducted; however, his assailants could not be identified. Because McCullough, a maximum security inmate, had an enemy at NBCI, his housing options are severely limited.  NBCI and WCI are the only two maximum security prisons in Maryland.[6] Nevertheless, staff at WCI attempted to have McCullough's security level lowered to medium so

---

[5] The Court notes, however, that the applicable standard for assignment to protective custody is "appropriate only when required for the protection of the inmate" and case management teams "may consider an inmate for transfer to a designated protective custody facility to ensure the consistent and safe management of an inmate who is deemed to be at risk if housed in general population in any DOC facility."  ECF No. 31, Ex. 8 at 6–7.  Alternatives to assigning an inmate to protective custody include: transfer to a different housing unit in the same facility; lateral transfer to another facility of the same security level; transfer of the documented enemy or enemies; transfer to another state under the Interstate Corrections Compact; transfer to MCAC in exceptional circumstances; and assignment to home detention if eligible.  *Id*.

[6] McCullough's claim that he was illegally warehoused on administrative segregation is belied by the record.  It is clear that his assignment to administrative segregation was for the sole purpose of insuring his safety while the circumstances of his assault were investigated and a determination made where he could be safely housed.

he could be transferred to another prison as a general population inmate.  ECF No. 31, Exs. 5 & 6.  A reduction in his security level was disapproved by DOC headquarters and McCullough remained on administrative segregation until March 22, 2012, when it was determined that he could be transferred back to NBCI because his enemy was no longer confined there.  *Id*., Ex. 4 at 2; Ex. 5 at 1-2, 6.

When contrasted with the lack of response to McCullough's May 15, 2011 ARP, Defendants' actions following his assault support a conclusion that they were subjectively unaware of the dangers posed to McCullough prior to the actual assault.  *See Farmer*, 511 U.S. at 847 (liability hinges on subjective awareness of the risk to the inmate and subsequent failure to take reasonable measures to abate the risk).  The subsequent attacks on McCullough must be viewed in light of Defendants' admitted awareness of the danger posed to McCullough following the May 31, 2011 assault and in light of the parties' inability to identify the assailants involved.

McCullough wrote an inmate request form dated June 17, 2011, addressed to Lt. Natale, asking for Razzaq Karim to be moved out of his cell.  ECF No. 24, Ex. C at 3.  In the request he indicates that his family had already threatened to sue the prison if the administration allowed him to be murdered in prison and that "the inference can be drawn that my life is in danger because of my year 2002 high profile case which involved a young female victim."  *Id*. Additionally, he accuses Natale of making good on his threats to house him with the worst inmates he can find and claims officers are telling his cell mates about his offense.  *Id*.

In another inmate request, also dated June 17, 2011, but addressed to James Wilson, McCullough claims that on June 16, 2011 he was choked unconscious by Karim after Officer Conner told Karim that McCullough is a child molester.  *Id*., Ex. C at 1–2.    Additionally McCullough alleges he protested Karim's assignment to his cell in light of the recent assault he

suffered at the hands of unidentified inmates and told the officers who escorted Karim to the cell that he has a high profile case, making him a target for violent assaults. *Id.* There is no indication that either request was received or addressed by prison staff.

An investigation into McCullough's claim against Karim was conducted and included an investigation into his allegation that staff was putting inmates into McCullough's cell for the express purpose of causing him harm. ECF No. 31, Ex. 19 at 6–7. Lt. Natale investigated the claim and could not identify any reason for Razzaq to assault McCullough after speaking with Officer Connor, Officer Bonner[7] and Razzaq.[8] *Id.* at 7. Additionally, he noted that McCullough waited ten days after the incident to submit an ARP about the alleged assault and, in the meantime, he was seen for administrative segregation review on July 1, 2011, and did not mention the assault. *Id.* Natale concluded that McCullough's complaint was without merit.

In an ARP dated November 6, 2011, which McCullough forwarded to the IGO, he raises the claim regarding Karim's assault against him. Doc. No. 24, Ex. C. In that complaint, McCullough admits he did not seek medical attention after the assault because he was choked and slammed against the wall and no bruises would have been visible, making the assault unverifiable by medical. *Id.* at 13. McCullough's reluctance to report the assault to medical staff and his delay in reporting the matter to correctional staff support Natale's conclusion that the complaint regarding Karim was without merit.

McCullough also complained about another cell mate, Miguel Vazquez, whom he claimed was mentally ill and plotting to assault or kill McCullough in order to get transferred

---

[7] Connor and Bonner related that McCullough simply said he did not want another inmate in his cell and relented when he was told he would receive a disciplinary adjustment if he did not allow Karim to move into the cell. ECF No. 31, Ex. 19 at 8–9.

[8] Razzaq denied assaulting McCullough and stated he believed the allegation was some sort of plot. ECF No. 31, Ex. 19 at 10.

back to Spring Grove Hospital.  *Id.*, Ex. C.  In a complaint dated July 8, 2011, McCullough relates that Vazquez does not know the circumstances of McCullough's criminal conviction, but asks what will happen if Vazquez finds out.  *Id.* at 4.  McCullough then claims staff is housing him with inmates like Vazquez in an effort to have him harmed.  *Id.* at 5.  Based on this complaint, McCullough maintains he should be assigned to a single cell.  To the extent this complaint was received by correctional staff, it does not convey a message of imminent danger to McCullough's safety and a lack of response to it would, therefore, not be evidence of deliberate indifference to his safety.

The undisputed evidence establishes that while Defendants were aware of facts supporting an inference that McCullough was in danger of being assaulted prior to May 31, 2011, they failed to draw the inference.  *See Rich*, 129 F. 3d at 339-40.  Following the assault, Defendants took measures to keep McCullough safe by assigning him to administrative segregation and conducting an investigation.  McCullough disagreed with the decisions regarding his housing assignment.  He did not want to be confined to administrative segregation and felt he should not be housed with another inmate.  His assertions that one of his cellmates assaulted him are unsupported by objective evidence and his failure to report the assault to medical or correctional staff lends no credence to his claim.  Under the circumstances it was not unreasonable for Defendants to deny McCullough's requests to be single celled.

Defendants' decision not to assign McCullough to protective custody was based on factors regarding McCullough's propensity toward violent behavior.  As observed, inmates housed on protective custody have verified threats on their lives and an assaultive inmate in their midst would be counter-productive.  There is also no evidence to support McCullough's assertions that correctional officers are announcing the nature of his crime and telling other

inmates that he is a child molester.  McCullough's numerous requests and complaints almost invariably include a reference to the nature of his offense.  It thus appears it is McCullough who publicizes the circumstances of his offense within the prison.

The Eighth Amendment claim for failure to protect from violence fails on the record before this court.  A careful review of the exhibits filed and the allegations raised establish that McCullough is less concerned with his physical safety and more concerned with dictating where and with whom he is housed.  His objections to an out-of-state transfer and the allegation that his frequent moves between cells is harassment are inconsistent with his claim that his life is endangered by the entire Maryland prison population.  Based on this record, Defendants are entitled to summary judgment in their favor.  A separate order follows.


Date: <u>August 29, 2012</u>                              <u>                    /s/                    </u>
                                                            ROGER W. TITUS
                                                            UNITED STATES DISTRICT JUDGE